## <u>AFFIDAVIT IN SUPPORT OF COMPLAINT</u>

I, Dane C. Jobst, having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.  I am a State Trooper employed by the Massachusetts State Police (MSP) since June 27, 2019. My current assignment is with the Narcotics Section within the Division of Homeland Security and Preparedness. I am assigned as a Task Force Officer (TFO) for the U.S. Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF) in the Massachusetts Homeland Security Task Force (HSTF) of the ATF Boston Field Division. As an ATF TFO, I am sworn as a Deputy U.S. Marshall to conduct federal investigations. My primary duties with ATF include the investigation and prevention of federal offenses involving the unlawful use, manufacturing, possession, and trafficking of firearms.

2.  Before my assignment with the ATF HSTF, I was attached to the ATF Worcester Satellite Office, the ATF Springfield Field Office, and the Hampden County District Attorney's Office Strategic Action & Focused Enforcement Task Force. My primary duties with the SAFE Task Force included investigating prolific violent offenders, their leadership, and their associated networks through an intelligence-led, pro-active and coordinated effort with federal, state, and local law enforcement agencies. Prior to my assignment with the MSP Narcotics Section, I was assigned to the Troop B Community Action Team and worked at the B3 Springfield State Police Barracks. Prior to my employment with MSP, I worked as a full time Police Officer for the Worcester Police Department, and as a part time Police Officer for the Deerfield Police Department and the Brookfield Police Department.

3.  As part of my training and employment, I have experience conducting surveillance, utilizing confidential informants, and conducting court-authorized electronic surveillance. I have

made and/or assisted in numerous firearms arrests, as well as arrests for trafficking, distribution, and possession of narcotics. Furthermore, I have authored and/or assisted in the drafting of various affidavits, including state wiretaps, and have participated in arrest warrants and the planning and execution of search warrants in firearms and narcotics investigations.

4.      I have a master's degree in public administration from Roger Williams University, and a Bachelor of Science degree in criminal justice with a minor in philosophy and law from Worcester State University. I successfully completed the MSP Academy in New Braintree, Massachusetts, the Worcester Police Academy in Worcester, Massachusetts, and the Franklin County Reserve/Intermittent Academy in Greenfield, Massachusetts. These academy trainings covered patrol procedures, motor vehicle law, criminal law, constitutional law, search and seizure law, and violations of the Massachusetts Controlled Substance Act.

5.      I submit this affidavit to establish probable cause that Caua DA SILVA (born in 2004) violated 18 U.S.C. § 922(A)(1)(a), engaging in the business of dealing in firearms without a license, in the District of Massachusetts from November 19, 2025, through March 6, 2026.

6.      As a result of my personal participation in the investigation, review of reports submitted by other law enforcement personnel, and my consultations with other law enforcement officers, I am familiar with this investigation. Because I submit this affidavit for the limited purpose of securing the requested complaint, I have not included every fact known to me concerning this investigation but, instead, have set forth only those facts that I believe are necessary to establish probable cause. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

**STATEMENT OF PROBABLE CAUSE**

**Introduction**

7.      In July 2025, ATF and other members of law enforcement initiated an investigation into DA SILVA as a suspected source of firearms illegally being sold in Massachusetts.

8.      Investigators queried the ATF Federal Licensing System (FLS) to determine whether DA SILVA maintained the appropriate licensure to engage in the business of manufacturing and/or dealing in firearms. The result of that query revealed DA SILVA has never applied for, nor received, nor maintained such a license.

9.      Additionally, ATF investigators contacted members of Homeland Security Investigation (HSI), who advised that DA SILVA is not lawfully present in the United States of America. Furthermore, HSI advised that DA SILVA had previously applied for an employment authorization, which was denied.

10.     Beginning in November 2025, ATF conducted three (3) controlled purchases of firearms from DA SILVA using an ATF Confidential Informant ("CI.")[1]   These controlled purchases took place in the District of Massachusetts on November 19, 2025, February 27, 2026, and March 6, 2026, and were audio and video recorded. Law enforcement compared a known

---

[1] The CI has a criminal history that includes convictions in state court for breaking and entering in 1993, knowingly receiving stolen property (motor vehicles) in the mid-1990s, and possession of both Class B and Class D (marijuana) substances in the mid-1990's and early 2000's. The CI agreed to cooperate with law enforcement in this matter in exchange for monetary payment. The CI's identity is known to ATF Special Agent Jay Godino and to me. The CI has previously supplied information to law enforcement officers, including detailed information on suspects' criminal activity, including methods of operation, primary territory, criminal associates, locations of criminal activity, vehicles used, license plates, etc. The information received from the CI has then been corroborated by law enforcement officers. According to investigators, the CI has also made statements against his/her penal interest when describing his/her personal criminal involvement with area drug and/or firearms dealers. The CI has previously provided information and/or purchased contraband for law enforcement officers for investigations that have resulted in seizures of controlled substances and/or firearms.  In the District of Massachusetts, the CI has participated reliably in approximately 14 controlled firearms and/or narcotics purchases and has reliably reported on his observations, which ATF has corroborated whenever possible. Thus, I believe the CI is reliable.

photograph of DA SILVA with still images of the recordings from the controlled purchases and confirmed that the individual who met and sold firearms to the CI on three (3) separate occasions was in fact Caua DA SILVA. Furthermore, as discussed in this affidavit, DA SILVA arrived at a controlled buy in a vehicle that is registered in his name and inside which he was previously stopped by law enforcement in February 2026.

**DA SILVA's Communications with the CI**

11.     Beginning on or about September 4, 2025, the CI was contacted via a telephone ending in 2363 ("PHONE 1"). Upon the CI receiving this call from PHONE 1, investigators entered the phone number into various law enforcement databases. PHONE 1 was tentatively identified as being used by DA SILVA because this telephone number is associated with a Cash App account bearing the vanity name "Caua Caua da Silva" and Cash App account identifier "$cauaCauadaSilva."

12.     Following initial discussions, on September 4, 2025, DA SILVA, via PHONE 1, sent the CI a video of a Glock-style Privately Made Firearm (PMF)[2] pistol which was followed by an exchange of text messages and voice calls between the CI and DA SILVA. After several months of communication, the CI and DA SILVA agreed to meet on November 19, 2025, in the parking lot of Lowes, located at 40 Fortune Boulevard, Milford, Massachusetts, as described below.

13.     As the investigation progressed, beginning on or around November 24, 2025, DA SILVA communicated with the CI via PHONE 1 that DA SILVA wanted to transition to WhatsApp to communicate with one another. Beginning on or about December 23, 2025, the CI

---

[2] PMFs are commonly referred to as "ghost guns" because it can be difficult for investigators to track them.

began communicating with DA SILVA via WhatsApp through DA SILVA's WhatsApp phone number, ending in 0998 (hereinafter "the WhatsApp").[3]

14.    The CI and DA SILVA exchanged numerous communications via PHONE 1 and the WhatsApp about firearms purchases and sales, that resulted in the controlled purchases of firearms from DA SILVA discussed in this affidavit. The communications between the CI and DA SILVA were spoken or written in English, Spanish, and Portuguese. Said communications were synopsized, summarized and translated by law enforcement officials who are fluent in these languages to the best of their abilities.

**CONTROLLED PURCHASE #1 ON NOVEMBER 19, 2025**

15.    On November 19, 2025, the CI and DA SILVA continued to communicate via PHONE 1 about firearms for purchase/sale. During these communications, DA SILVA confirmed the Glock-style and/or PMF firearm had a laser/light attachment, was a 9mm pistol, and was priced at one thousand, three hundred dollars ($1,300).

16.    On November 19, 2025, investigators met at a pre-determined location in Milford, MA, ahead of the controlled purchase. The CI was provided with one thousand, three hundred dollars ($1,300) and outfitted with audio/video recording equipment. ATF investigators searched the CI and the CI's vehicle for weapons, money, and contraband with negative results. The CI eventually drove to the agreed upon location, the Lowes located 40 Fortune Boulevard, in Milford,

---

[3] Subscriber records for the telephone number ending in 0998 that were obtained from AT&T revealed the subscriber as a woman, not DA SILVA, with an address in Mendon, MA.  The service start date with AT&T was February 24, 2026.

Massachusetts, in a vehicle that was outfitted with audio/video recording and transmitting equipment, to conduct the transaction.[4]

17.    During this time, investigators conducted surveillance at 48 Congress Street Apt. 2, Milford, Massachusetts (hereinafter "ADDRESS 1"), which is the address on file for DA SILVA with the Milford Police Department (MPD).  Investigators observed a blue Mercedes sedan bearing Massachusetts registration 4SFW92 (hereinafter "VEHICLE 1")[5] arrive and park outside of ADDRESS 1. Investigators determined that VEHICLE 1 is registered to DA SILVA, and currently has Massachusetts registration MA88AK, which was confirmed through the Criminal Justice Information System (CJIS).[6]  Investigators observed a male, later confirmed to be DA SILVA, park VEHICLE 1 outside of ADDRESS 1 and enter into the side door on the ground/first level of ADDRESS 1.

18.    Shortly after, investigators observed DA SILVA exit the same side door of ADDRESS 1 while holding an unknown item in his hands. Investigators saw DA SILVA enter the driver's seat of VEHICLE 1, depart the area, and drive to the parking lot of Mattress Firm located at 103 Cedar Street, Milford, Massachusetts.[7]  Investigators observed VEHICLE 1 remain in this

---

[4] During each controlled purchase described in this affidavit, investigators made reasonable efforts to maintain physical surveillance of the CI, to, from, and during the transactions.

[5] Per MPD, on February 9, 2026, Sergeant Jon Lavigne conducted a motor vehicle stop of VEHICLE 1 which, at the time of the vehicle stop, was being operated by DA SILVA.

[6] On January 2, 2026, the Massachusetts registration for the MA88AK plate became active.  The MA88AK plate is part of the Massachusetts 250th anniversary license plate series. *See* https://www.mass.gov/news/rmv-celebrates-massachusetts-250-with-commemorative-license-plate. According to the RMV, the Vehicle Identification Number (VIN) for VEHICLE 1 remains the same after the switch from the 4SFW92 plate to the current MA88AK plate.

[7] The public right of access to and from Lowes and Mattress Firm are one in the same, as the parking lots for the respective businesses can be accessed by one another

6

area until the arrival of the CI. Thereafter, investigators observed VEHICLE 1 depart the parking lot area of Mattress Firm and drive to the Lowes parking lot, eventually parking by the CI's vehicle. Surveilling agents determined DA SILVA was the only person inside of VEHICLE 1.

19.    Shortly thereafter, DA SILVA exited VEHICLE 1 and entered the front passenger seat of the CI's vehicle. While inside of the CI's vehicle, DA SILVA gave the CI a tan PMF 9mm pistol (without a serial number) with a Glock slide and laser/light attachment, a 10-round 9mm Glock magazine, and four (4) rounds of assorted 9mm ammunition. In exchange, the CI gave DA SILVA the $1,300. Immediately following the controlled purchase, DA SILVA exited the vehicle the CI was utilizing for the deal. Upon exiting the CI's vehicle, DA SILVA returned to VEHICLE 1 and departed the area.

20.    After the controlled purchase, agents met with the CI at a pre-determined location. The CI and the CI's vehicle were searched again for weapons, contraband, and money. Investigators then recovered the purchased contraband. Thereafter, the CI was interviewed about the transaction and investigators reviewed the recording(s) of the deal to verify the CI's account.

21.    The evidence purchased on this date is depicted below (Ex. 1, Ex. 2):




Ex. 1                                                                Ex. 2

22.    Photos of DA SILVA during the controlled purchase are included below.

 

23.    For comparison, the photograph below, which was obtained through CJIS, is the Massachusetts Registry of Motor Vehicles (RMV) photograph associated with DA SILVA.



**CONTROLLED PURCHASE #2 ON FEBRUARY 27, 2026**

24.    Between November 19, 2025, and February 27, 2026, the CI and DA SILVA continued to communicate via PHONE 1 and WhatsApp about additional firearms for purchase/sale. During these communications, DA SILVA sent the CI numerous photos that

8

depicted firearms offered for purchase/sale. The CI and DA SILVA arranged for the purchase/sale of black 9mm pistol for one thousand, five hundred dollars ($1,500).

25.    On February 27, 2026, investigators met the CI at a pre-determined location in Hudson, MA, ahead of the controlled purchase. ATF investigators searched the CI and the CI's vehicle for weapons, money, and contraband with negative results. The CI was provided with one thousand, five hundred dollars ($1,500) and outfitted with audio/video recording equipment. Based on the communications, DA SILVA mentioned that he would be working, and, based on the investigation, investigators believe DA SILVA could be operating a tow truck. The CI drove to the agreed upon location, a Walmart located at 280 Washington Street, Hudson, Massachusetts, in a vehicle that was outfitted with audio/video recording and transmitting equipment, to conduct the transaction.

26.    During this time, surveilling agents observed a white flatbed tow truck, with a business name in green font, bearing a Massachusetts commercial registration (hereinafter "VEHICLE 2"), park directly alongside the vehicle being utilized by the CI. Per CJIS, VEHICLE 2 is registered to an LLC in Marlborough, Massachusetts.[8]  The CI  entered the front passenger seat of VEHICLE 2.   While inside of VEHICLE 2, DA SILVA provided the CI with a black Stallard Arms Inc. Model JS-9mm pistol bearing serial number 067264 that appeared partially defaced, a metal 9mm magazine, and six (6) rounds of Aguila 9mm ammunition. In exchange, the

---

[8]Investigators believe this LLC is DA SILVA's employer. DA SILVA's vehicle, which the investigation shows is VEHICLE 1, has been observed at the employer's location in Marlborough, MA during various hours of the morning and night. Additionally, DA SILVA stated he was working and directed the CI to this location on one of the buys. And lastly, DA SILVA arrived at the final two controlled buys discussed herein in vehicles associated to the LLC.

CI gave DA SILVA the $1,500. Following the controlled purchase, the CI returned to the vehicle being utilized for the deal. Simultaneously, DA SILVA departed the area.

27.     After the controlled purchase, agents met with the CI at a pre-determined location, and the CI and the CI's vehicle were searched again for weapons, contraband, and money. Investigators recovered the purchased contraband. Thereafter, the CI was interviewed about the transaction and investigators reviewed the recording(s) of the deal to verify the CI's account.

28.     The evidence purchased on this date is depicted below (Ex. 3, Ex. 4):

 

Ex. 3                                          Ex. 4

29.     Photos of DA SILVA from this controlled purchase are included below:

 

**CONTROLLED PURCHASE #3 ON MARCH 6, 2026**

30.     Between February 27, 2026, and March 6, 2026, the CI and DA SILVA continued to communicate via WhatsApp about additional firearms for purchase/sale. During these communications, DA SILVA sent the CI a photo that depicted a firearm offered for purchase/sale. The CI and DA SILVA arranged for the purchase/sale of black Canik 9mm pistol for one thousand, five hundred dollars ($1,500).

31.     On March 6, 2026, investigators met at a pre-determined location in Hudson, MA, ahead of the controlled purchase. ATF investigators searched the CI and the CI's vehicle for weapons, money, and contraband with negative results.  The CI was provided with one thousand, five hundred dollars ($1,500) and outfitted with audio/video recording equipment. During the communications leading up to the controlled purchase, DA SILVA mentioned that he would be working. The CI drove to the agreed upon location, 280 Washington Street, Hudson, Massachusetts (Walmart), in a vehicle that was outfitted with audio/video recording and transmitting equipment, to conduct the transaction.

32.     During this time, investigators observed a white sedan, later confirmed to be a Chevrolet bearing a Massachusetts dealer license plate (hereinafter "VEHICLE 3"),[9] park directly alongside the CI's vehicle.  DA SILVA entered into the front passenger seat of the CI's vehicle. While inside of the CI's vehicle, DA SILVA provided the CI with a black Canik 55 TP9 9mm pistol (serial number: 13AI07593), a 17-round 9mm magazine, and fifteen (15) rounds of assorted 9mm ammunition in exchange for $1,500. Immediately following the controlled purchase, DA SILVA exited the CI's vehicle, entered VEHICLE 3, and departed the area.

---

[9]Per CJIS, VEHICLE 3 is also registered to the LLC in Marlborough, Massachusetts which investigators believe is DA SILVA's employer.

11

33.     After the controlled purchase, agents met with the CI at a pre-determined location, and the CI and the CI's vehicle were searched again for weapons, contraband, and money. Investigators recovered the purchased contraband. Thereafter, the CI was interviewed about the transaction and investigators reviewed the recording(s) of the deal to verify the CI's account.

34.     The evidence purchased on this date is depicted below (Ex. 5, Ex. 6):

 

Ex. 5                                                                                                  Ex. 6

35.     Photos of DA SILVA from this controlled purchase are included below:

 

36.     The CI and DA SILVA have remained in communication. Most recently, the CI purchased another firearm from DA SILVA on April 21, 2026.  For this controlled transaction,

DA SILVA left the gun inside of a vehicle parked at ADDRESS 1 in Milford, MA.  The CI later retrieved the gun, and left money for DA SILVA near ADDRESS 1 that DA SILVA later retrieved.

## CONCLUSION

37.    Based on the foregoing facts, I submit there is probable cause to believe that from November 19, 2025, through March 6, 2026, in the District of Massachusetts, Caua DA SILVA not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms, in violation of Title 18, United States Code, Section 922(a)(1)(A).

I declare that the foregoing is true and correct,

Dane C. Jobst, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Sworn to via telephone in accordance with Fed. R. Crim. P. 4.1 this __27th__ day of April 2026.

3:51 p.m.

HONORABLE DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

13